[Cite as *State v. Mays*, 2016-Ohio-7481.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103785**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEON MAYS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-594057-A

**BEFORE:** Celebrezze, J., McCormack, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** October 27, 2016

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Kelly Needham
          Gregory J. Ochocki
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Deon Mays ("Mays"), brings this appeal challenging his convictions and the trial court's sentence for robbery and theft. Specifically, Mays argues that his trial counsel provided ineffective assistance by advising him to plead guilty to robbery and theft, and failing to request merger of the counts at sentencing. Furthermore, Mays argues that the trial court erred by accepting his guilty plea because he did not knowingly, intelligently, and voluntarily enter the plea. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} The instant matter arose from a drug deal that turned into a robbery. On March 3, 2015, Mays, codefendant Christopher Hale ("Hale"), and a third individual[1] went to the victim, Tyrone Meeks's ("Meeks") house to purchase marijuana. At some point during the transaction, the third individual pulled out a gun, pointed it at Meeks, and ordered Meeks to turn over his weapon. Mays described the third individual's gun as a "big gun" and Meeks described the gun as a Tec-9. Meeks complied with the orders and turned over his gun to the third individual. The third individual handed Meeks's gun to Mays. Mays explained that Meeks's gun was a revolver, and Meeks informed the officers that his gun was a "357 Special snub nose hand gun." While Meeks was held at gunpoint,[2] Mays, Hale, and the third individual proceeded to steal various items from

---

[1] Mays asserted that although he knew the third individual, he did not know his real name.

[2] In his statement to the police, Meeks asserted that his girlfriend was also present at the

Meeks's house, including marijuana, a television, a laptop computer, a desktop computer, $580 in cash, and two iPhones.

{¶3} After Mays, Hale, and the third individual left the residence, Meeks was able to trace the location of one of the stolen iPhones. Meeks contacted the East Cleveland Police Department and notified officers that the phone was located between Glenmont and Luxor Roads in Cleveland. Furthermore, Meeks informed the officers that the males were driving a dark blue Volkswagen.

{¶4} Officers responded to the area where Meeks traced the iPhone and located a car that matched Meeks's description. Officers observed three males unloading items from the vehicle. The officers approached the vehicle and detained Mays and Hale after they attempted to flee. The officers recovered a small .38 caliber revolver in the snow where Mays and Hale attempted to jump a fence. The officers were unable to locate Meeks's gun, and Meeks confirmed that the revolver recovered in the snow was not the gun that had been stolen from him. Officers subsequently detained a third suspect, Aaron Taylor. The officers searched the vehicle and found many of the items that had been stolen from Meeks. Thereafter, Meeks was transported to the scene where he positively identified Mays, Hale, and Taylor as the men who robbed him at gunpoint.

{¶5} In Cuyahoga C.P. No. CR-15-594057-A, the Cuyahoga County Grand Jury returned a seven-count indictment charging Mays with (1) aggravated robbery, in

residence and that the males pointed a gun at her and demanded that she lay on the floor. However, Mays claimed that he did not see the girlfriend at the residence and did not know that she was present until she provided a statement to the police.

violation of R.C. 2911.01(A)(1), (2) robbery, in violation of R.C. 2911.02(A)(1), (3)-(4) kidnapping, in violation of R.C. 2905.01(A)(2), (5) theft, in violation of R.C. 2913.02(A)(1), (6) receiving stolen property, in violation of R.C. 2913.51(A), and (7) tampering with evidence, in violation of R.C. 2921.12(A)(1). Counts 1 through 4 contained one- and three-year firearm specifications, and Counts 1, 2, and 4 contained forfeiture specifications. Mays pled not guilty to the indictment at his arraignment.

{¶6} The parties reached a plea agreement, and Mays pled guilty to an amended Count 2, robbery, a second-degree felony with a one-year firearm specification, and Count 5, theft, a fifth-degree felony. Furthermore, Mays and Hale agreed to pay restitution to Meeks, jointly and severally, in the amount of $537.84, and agreed to have no contact with Meeks. The state agreed to dismiss the remaining counts and specifications charged in the indictment.

{¶7} On October 21, 2015, the trial court sentenced Mays to an aggregate three-year prison term: two years on the robbery count to be served consecutively to the one-year firearm specification, and one year on the theft count to be served concurrently. The trial court ordered Mays to pay $587.13 in restitution.

{¶8} Mays filed the instant appeal assigning two errors for review:

I. Appellant was denied effective assistance of counsel in violation of Amendments VI and XIV, United States Constitution; and Article I, Section 10, Ohio Constitution when counsel advised appellant to plead to an offense for which he was not guilty and failed to object to sentencing individually for robbery and theft when they were allied offenses of similar import.

II. The trial court erred in accepting appellant's guilty plea and appellant's guilty plea is void and invalid in light of the fact that the plea was not

entered into knowingly, voluntarily, and intelligently, in violation of appellant's right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

## II. Law and Analysis

## A. Ineffective Assistance of Counsel

{¶9} In his first assignment of error, Mays argues that his counsel provided ineffective assistance by failing to request merger of the robbery and theft counts at sentencing and advising him to plead guilty.

{¶10} In order to establish ineffective assistance of counsel, Mays must demonstrate that (1) counsel's performance fell below an objective standard of reasonable representation, and (2) he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

{¶11} The failure to prove either prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

> In particular, a court need not determine whether counsel's performance
> was deficient before examining the prejudice suffered by the defendant as a
> result of the alleged deficiencies. * * * If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice * * * that course should be followed.

*Strickland* at *id*.

### 1. Allied Offenses

{¶12} First, Mays contends that his counsel's assistance was ineffective because counsel failed to argue that the theft and robbery offenses were allied offenses of similar import that should be merged for sentencing purposes.

{¶13} The state argues that Mays cannot show that he was prejudiced by his counsel's failure to request merger of the robbery and theft counts at sentencing because the trial court ordered the sentences to run concurrently. The state's argument is misplaced. In *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, the Ohio Supreme Court explained that "a conviction is composed of a finding of guilt and a sentence[.]" *Id*. at ¶ 6. Thus, even though the trial court ordered Mays to serve the robbery and theft counts concurrently, Mays can demonstrate prejudice because he now has two convictions, rather than one, on his record.

{¶14} In *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, the Ohio Supreme Court held that "[a]n accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *Id*. at ¶ 3. Furthermore, the court explained that "an accused has the burden to demonstrate a reasonable probability

that the convictions are for allied offenses of similar import *committed with the same conduct* and without a separate animus[.]"   (Emphasis added.)   *Id.*

{¶15} In the instant matter, we find that Mays's ineffective assistance claim regarding counsel's failure to request merger of the robbery and theft counts at sentencing fails under the second *Strickland* prong.   For the reasons that follow, Mays cannot show prejudice, or a reasonable probability that but for trial counsel's failure to request merger, the proceeding's result would have been different.

{¶16} The only record of facts underlying Mays's convictions are the discussion of the facts at the sentencing hearing and Meeks's account of the incident in the presentence investigation report.   During the sentencing hearing, both Mays and Mays's counsel described the facts underlying Mays's robbery and theft convictions.   First, according to Mays's counsel, Mays was holding a gun and codefendant Hale "grab[bed Meeks's] marijuana that was sitting on the table and [ran] out to the car * * *.   Mr. Mays also left the scene of the incident and ran downstairs[.]"

{¶17} Second, Mays explained that Meeks invited him, Hale, and the third individual into his apartment.   Mays stated that Meeks brought the males upstairs, took out "pounds of marijuana," and began weighing it on his scale.   Mays asserted that the third individual drew his gun, pointed it at Meeks, and ordered Meeks to turn over his gun.   Mays explained that the third individual took Meeks's gun and handed it to him. Mays claimed that he tried to give Meeks's gun to Hale, but Hale refused to take it. Mays stated that Hale grabbed Meeks's marijuana and he and Hale ran downstairs,

outside of the apartment, and sat in the car.    At this point, the robbery was complete.

{¶18} Furthermore, Mays stated that he and Hale subsequently helped the third individual carry Meeks's property — including a microphone, television, laptop computer, desktop computer, money, a gun, and two cell phones — from Meeks's apartment to the car.    At this point, the theft was complete.

{¶19} On the other hand, in the presentence investigation report, Meeks stated that he sold marijuana to Mays, Hale, and the third individual *outside of his residence*. Meeks explained that as he was walking back inside the residence, the third individual pointed a gun at his back.    Meeks stated that the three men *walked him upstairs at gun point* and began robbing him of his belongings.    Furthermore, Meeks explained that the men *also pointed a gun at his girlfriend* and demanded that she lay on the floor.

{¶20} After reviewing the record, it is evident that Mays's and Meeks's accounts of the incident are considerably different.    However, on this record, including both Mays's and Meeks's accounts of the incident, Mays has failed to demonstrate a reasonable probability that he was convicted of allied offenses of similar import.

{¶21} It is entirely reasonable for a court to infer in this case that Mays and Hale (1) stole the marijuana from Meeks — while Mays was carrying Meeks's gun — and ran out of the house, and then, subsequently (2) assisted the third individual by carrying Meeks's other belongings from the apartment to the car.    Accordingly, it is entirely reasonable for a court to infer that Mays committed separate and distinct acts resulting in separate and distinct counts of robbery and theft.

{¶22} The record reflects that the state charged Mays with separate and distinct offenses for his separate and distinct conduct. The robbery count alleged that Mays committed or attempted to commit a theft offense while in possession of a firearm. As outlined above, Mays was carrying Meeks's gun when Hale stole the marijuana, and the two ran out of Meeks's apartment. The theft count alleged that Mays deprived Meeks of the items that Mays, Hale, and the third individual carried from Meeks's apartment to the car.

{¶23} For all of the foregoing reasons, we find that Mays failed to demonstrate a reasonable probability that his robbery and theft convictions constituted allied offenses of similar import. Because Mays failed to demonstrate a reasonable probability that his robbery and theft convictions constituted allied offenses of similar import, his ineffective assistance of counsel claim fails under the second *Strickland* prong. Mays cannot show a reasonable probability that but for counsel's failure to request merger of his robbery and theft convictions at sentencing, the result of the proceedings would have been different.

{¶24} Accordingly, Mays's ineffective assistance claim regarding his counsel's failure to request merger of the robbery and theft counts at sentencing is overruled.

## 2. Guilty Plea

{¶25} Second, Mays contends that his counsel's assistance was ineffective because counsel advised him to plead guilty to robbery and theft even though his actions did not support the elements of the offenses.

{¶26} A defendant who pleads guilty waives all appealable issues, including the

right to assert an ineffective assistance of counsel claim, except the defendant may claim ineffective assistance of counsel on the basis that the counsel's deficient performance caused the plea to be less than knowing, intelligent, and voluntary. *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11*, citing *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992), citing *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). In such cases, a defendant can prevail only by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Williams* at ¶ 11*, citing *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992); *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The prejudice inquiry in the context of a guilty plea requires a "nuanced analysis of all of the factors surrounding the plea decision," including the benefits associated with a plea, the possible punishments involved, the weight of the evidence against the defendant and any other special circumstances that might support or rebut a defendant's claim that he would have taken his chances at trial. *State v. Ayesta*, 8th Dist. Cuyahoga No. 101383, 2015-Ohio-600, ¶ 16.

{¶27} In *Premo v. Moore*, 562 U.S. 115, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011), the United States Supreme Court analyzed the *Strickland* standard in the context of plea bargaining:

> Acknowledging guilt and accepting responsibility by an early plea respond
> to certain basic premises in the law and its function. Those principles are

eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified. These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage.

*Id*. at 124-125.

**{¶28}** In the instant matter, Mays does not allege that his counsel coerced him into pleading guilty. Rather, Mays argues that his counsel provided ineffective assistance by "advis[ing] him to plead [guilty] to robbery and theft when [Mays's] actions did not support the elements of the offense[s]," "suggest[ing] that robbery and theft were

appropriate offenses for Mays to plead to," and "permitting Mays to enter into the plea." Appellant's brief at 2, 5.

{¶29} In support of his argument, Mays contends that the self-serving account of the incident that he provided at the sentencing hearing demonstrated that his conduct did not satisfy the elements of robbery and theft. Specifically, Mays emphasizes that (1) he did not intend to rob Meeks or steal anything from him, (2) he did not have a firearm in his possession when he went to Meeks's residence, (3) he did not steal anything from Meeks, (4) "[i]t was Hale alone who grabbed the bag of marijuana", and (5) the third individual forced him to carry the items from Meeks's residence to the car.

{¶30} Initially, we note that Mays's assertions regarding his intent and actions are misplaced and belied by the record. Even if Mays had not brought a gun to Meeks's residence,[3] he was in possession of Meeks's gun after the third individual disarmed Meeks. Furthermore, even if Mays did not intend to steal anything from Meeks, Mays ran out of the residence with Hale after Hale grabbed Meeks's marijuana and helped the third individual carry items that belonged to Meeks from the residence to the car. Despite Mays's self-serving claim that the third individual forced him to carry the items from the residence to the car, Mays chose to plead guilty to robbery and theft rather than pursuing the affirmative defense of duress at trial. Finally, we note that Mays's description of the incident, based upon which he claims that his counsel should not have

---

[3] It is unclear whether Mays and Hale were also carrying guns, as Meeks reported that there were three men total and that two were carrying handguns and one was carrying a Tec-9.

permitted him to plead guilty, was provided at the sentencing hearing — after the trial court found that he "voluntarily, knowingly, with a full understanding of his rights entered into his change of plea" and accepted his guilty plea.

{¶31} Mays was charged with seven felony counts: three first-degree felonies, one second-degree felony, one third-degree felony, one fourth-degree felony, and one fifth-degree felony. Furthermore, four of the seven counts in the indictment contained one- and three-year firearm specifications. Appellant's counsel successfully negotiated a plea bargain in which appellant pled guilty to only two of the seven felonies and only one one-year firearm specification. The state dismissed the remaining five felony counts and specifications. By successfully negotiating the plea bargain, Mays's counsel eliminated the risk of receiving a substantially longer sentence in the event that he was convicted at trial.

{¶32} Furthermore, Mays suggests that his counsel's statement at the sentencing hearing that "it is very likely that [Mays] had a weapon on him separate and apart from the weapon that was being brandished by the [third] individual" demonstrates his counsel "failed to have an understanding of the basic facts of the case." Appellant's brief at 5. We disagree.

{¶33} We find no merit to Mays's contention that counsel was "mistaken about the basic facts of the case." Mays himself acknowledged that he was in possession of Meeks's gun, and even "[took] full responsibility for [having the gun]." Furthermore, Meeks reported that two of the three males had handguns and the third individual had a

Tec-9. The gun that officers recovered in the snow after detaining Mays and Hale was neither a Tec-9 nor the gun that was stolen from Meeks. Finally, Mays contends that his counsel should have revealed that the third individual disarmed Meeks and handed Meeks's gun to Mays. However, Mays conveyed this information to the trial court: "[t]o be honest, it was truly [Meeks's] weapon that the other guy took from him and he gave it to me." (Tr. 60.)

{¶34} After reviewing the record, we cannot say that Mays's counsel's representation fell below an objective standard of reasonableness. The record reflects that Mays's counsel advocated on Mays's behalf in an effort to obtain a favorable sentence. Furthermore, Mays's counsel did, in fact, secure a favorable sentence for Mays, because the trial court imposed the minimum two-year sentence for the second-degree felony robbery count. Accordingly, Mays cannot demonstrate a reasonable probability that, but for counsel's alleged deficient performance, he would not have plead guilty to robbery and theft and instead would have insisted on going to trial.

{¶35} Mays's first assignment of error is overruled.

**B. Guilty Plea**

{¶36} In his second assignment of error, Mays argues that the trial court erred by accepting his guilty plea and proceeding with sentencing. In arguing this point, Mays relies on the issues that he raised in his first assignment of error, particularly that he did not have the requisite mens rea and that his conduct did not satisfy the elements of robbery and theft.

{¶37} In order to ensure that a defendant enters a plea knowingly, voluntarily, and intelligently, a trial court must engage in an oral dialogue with the defendant in accordance with Crim.R. 11(C). *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Schmick*, 8th Dist. Cuyahoga No. 95210, 2011-Ohio-2263, ¶ 5. "The standard for reviewing whether the trial court accepted a plea in compliance with Crim.R. 11(C) is a de novo standard of review." *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). The appellate court is required to "review the totality of the circumstances and determine whether the plea hearing was in compliance with Crim.R. 11(_)." *Id*.

{¶38} Crim.R. 11(C)(2) requires that a trial court determine from a colloquy with the defendant whether the defendant understands (1) the nature of the charge and maximum penalty, (2) the effect of the guilty plea, and (3) the constitutional rights waived by a guilty plea. *See, e.g., State v. Jordan*, 8th Dist. Cuyahoga No. 103813, 2016-Ohio-5709, ¶ 44. The constitutional rights include the rights to a jury trial, to confront witnesses, to have compulsory process to obtain witnesses in the defendant's favor, and *to require the state to prove the defendant's guilt beyond a reasonable doubt* at a trial at which the defendant cannot be compelled to testify against himself or herself. Crim.R. 11(C)(2)(c); *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶

21.

{¶39} A trial court must strictly comply with the Crim.R. 11(C)(2)(c) requirements that relate to the waiver of constitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18. With respect to the nonconstitutional requirements of Crim.R. 11, set forth in Crim.R. 11(C)(2)(a) and (b), reviewing courts consider whether there was substantial compliance with the rule. *Id*. at ¶ 14-17.

{¶40} After a thorough review of the plea hearing, we conclude that the trial court fully complied with Crim.R. 11 in ensuring that Mays's plea was voluntarily, knowingly, and intelligently entered.

{¶41} During the change of plea hearing, Mays advised the court that he was not under the influence of any drugs, alcohol, or medication that would affect his ability to understand the proceedings. Mays stated that he had discussed the facts of his case, listened to his attorney's advice, and was satisfied with the representation that he had received from his attorney. The trial court thoroughly reviewed the constitutional rights that Mays was waiving and made sure that he understood that he was waiving those rights by pleading guilty. The trial court reviewed the nature of the charges with Mays, as well as the maximum penalty involved with each charge. The trial court explained the other consequences of his plea, including the agreed-upon restitution, no-contact order, and forfeiture of the handgun. The trial court further informed Mays of the effects of his plea as it related to the charges.

{¶42} Mays confirmed that no threats or promises had been made to him to get

him to change his plea.   The trial court accepted Mays's guilty plea, finding that he "voluntarily, knowingly, with a full understanding of his rights entered into his change of plea."

{¶43} For all of the foregoing reasons, we find that Mays knowingly, voluntarily, and intelligently entered a guilty plea to the robbery and theft charges.   Nevertheless, Mays suggests that based on his account of the incident at the sentencing hearing, the trial court should have, sua sponte, "withdrawn [Mays's] guilty plea and advised him that his [account of the incident] did not meet the necessary elements of the crimes charged." Appellant's brief at 9.   We disagree.

{¶44} As noted above, Mays's argument that he did not have the requisite mens rea and his conduct did not satisfy the elements of robbery and theft is misplaced and unsupported by the record.   Mays's account of the incident, which he claims is the basis upon which the trial court should have, sua sponte, withdrawn his guilty plea, was provided at the sentencing hearing, after the trial court had already accepted the guilty plea that Mays knowingly, intelligently, and voluntarily entered.   Furthermore, during the change of plea hearing, the trial court advised Mays that he had the right "to require the State of Ohio to prove [his] guilt beyond a reasonable doubt if [the matter] went to trial."   Mays stated that he understood this right and chose, instead, to give up the right in order to enter into the guilty plea.

{¶45} Accordingly, in light of Mays's knowing, voluntary, and intelligent plea agreement, Mays's second assignment of error is overruled.

## III. Conclusion

{¶46} After thoroughly reviewing the record, we find that Mays's counsel did not provide ineffective assistance by failing to request merger of the robbery and theft offenses at sentencing and advising him to plead guilty to robbery and theft. Furthermore, we find that the trial court fully complied with Crim.R. 11 during the change of plea hearing and that Mays knowingly, voluntarily, and intelligently entered a guilty plea to robbery and theft.

{¶47} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

TIM McCORMACK, P.J., CONCURS;
ANITA LASTER MAYS, J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

ANITA LASTER MAYS, J., CONCURRING IN PART AND DISSENTING IN PART:

**{¶48}** I concur with the majority's disposition of the second assignment of error. However, I respectfully disagree with the majority's resolution of the first assignment of error regarding whether the offenses were allied.

**{¶49}** In the second part of Mays's first assignment of error, he argues that he was denied effective assistance of counsel when counsel failed to object to sentencing individually for robbery and theft when they were allied offenses of similar import.

> In *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21, the Ohio Supreme Court found that an appellant forfeits his or her allied offenses claim for appellate review by failing to seek the merger of his or her convictions as allied offenses of similar import in the trial court.

*State v. Williamson*, 8th Dist. Cuyahoga No. 102555, 2016-Ohio-690, ¶ 8.

**{¶50}** Mays did not raise this issue at trial.

> An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, which is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. [*Rogers*] at the syllabus. Moreover, unless an accused shows a reasonable probability that his or her convictions are allied offenses of similar import committed with the same conduct and without a separate animus, he or she cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

*Williamson* citing *Rogers.*

**{¶51}** Mays has the burden of showing that his convictions were allied offenses of similar import committed with the same conduct and without a separate animus.

> In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court recently clarified the test a trial court and a reviewing court must employ in determining whether offenses are allied offenses that merge into a single conviction, concluding that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the

defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id*. at ¶ 23. Thus,[i]f any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation. *Id*. at ¶ 25. The court also concluded that "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id*. at ¶ 26.

*Williamson* at ¶ 9.

**{¶52}** Mays pleaded guilty to robbery, a second-degree felony. The indictment reads as follows,

Deon Mays * * * on or about March 9, 2015 did, in attempting or committing a theft offense, as defined in Section 2913.01 and 2913.02 of the Revised Code, or in fleeing immediately after the attempt or offense upon Tyrone Meeks, did have a deadly weapon, to wit: gun/firearm, Serial 205696, on or about his person or under his control.

**{¶53}** Mays also pleaded guilty to theft, a fifth-degree felony. The indictment reads as follows,

Deon Mays * * * on or about March 9, 2015 did with the purpose to deprive the owner, Tyrone Meeks, of a studio microphone, and/or television and/or laptop and/or mini Mac desktop computer and/or money and/or gun and/or two cell phones or services, knowingly obtain or exert control over either property or services without the consent of the owner or person authorized to give consent and the property or services stolen is valued at $1,000 or more and less than $7,500.

**{¶54}** The indictment or the counts that Mays pleaded to do not contain language

that demonstrates that the two offenses caused separate, identifiable harm. The robbery count states that Mays attempted or committed a theft upon Meeks, with a deadly weapon. The theft count gives specific details as to what items were taken from Meeks. In addition, neither count states that the offenses were committed separately. Again, Mays pleaded guilty to a robbery for theft with a gun, and also pleaded guilty to that theft. The indictment also does not demonstrate that the robbery and theft were committed with a separate animus or motivation.

{¶55} Although Mays's testimony may support that different charges could have been brought against Mays and not constitute allied offenses, Mays pleaded to two counts that are tied together. The state did not charge Mays with separate offenses for robbery because it relates to the drugs and the theft of the other items, although it potentially could have. In addition to the indictment, the presentence investigation report echoes that the offenses were committed simultaneously. It states,

> On March 3, 2015, at approximately 12:25 a.m., officers responded to 1601 Glenmont for a burglary. Upon arrival the officers spoke to victim, Tyrone Meeks. Meeks stated that around 12:02 a.m. he had met up with his friend's brother outside of his house to sell him some weed. Meeks stated the friend's brother purchased the weed from him and as he (Meeks) was walking back inside his home, an unknown male approached him from behind and pointed a gun at his back. Meeks reported that there were three men total, two carrying hand guns and one carrying a [Tec-]9. He

stated they walked him upstairs at gun point into his home and began robbing him of his belongings.

**{¶56}** Mays pleaded guilty to robbery, which included the theft offense. The state argues that even if the offenses are allied, it did not prejudice Mays because he received concurrent sentences. We disagree. Even though Mays received concurrent sentences, he still has two convictions on his record. "'[T]he failure to merge allied offenses of similar import constitutes plain error, even when the defendant received concurrent sentences.'" *State v. Curtis*, 12th Dist. Brown No. CA2009-01-004, 2009-Ohio-6740, ¶ 10, quoting *State v. Underwood,* 2d Dist. Montgomery No. 22454, 2008-Ohio-4748, ¶ 28.

**{¶57}** I find that the record supports counsel's failure to object at appellant's sentencing hearing constitutes plain error, even when Mays received concurrent sentences for robbery and theft. I would hereby vacate appellant's sentence and remand the case for the limited purpose of resentencing appellant in accordance with this dissent.